Judge Boyle
delivered the opinion of the court.
This was an action of ejectment, in which the main point of controversy between the parties related to the boundary pf the tract of land claimed by the lessors of the plaintiff. On the trial in the circuit court, a verdict being found for the plaintiff, the counsel for the defendant moved the court for a new trial, on the ground that the verdict ivas contrary to law and evidence, but the court overruled the motion, and the counsel for the defendant excepted. On a subsequent day of the term, the counsel for the de *29 fendant produced in court tlie affidavit of the tenant hi possession, who managed the suit for the defendant, stating his surprise and the grounds of ids surprise, in the court’s having rejected as evidence on the trial, sundry depositions contained in a record of a suit in chancery, brought against 'him and others, by John M’Gee in his life-time, under whose will the lessors of the plaintiff derived title, and thereupon the defendant’s counsel again moved the court fora new trial, but the court refused to hear the affidavit and the record containing those depositions read, unless the defendant would withdraw his former bill of exceptions, w hich he refused to do, and took an exception to the opinion of the court, and a judgment having been entered upon the verdict of the jury, the defendant has brought the case to this court by writ of error.
. When then? oV^evTctenctT the court will nut grant a against the verdict: 3 j^nst2 5S ’ ⅛ 118‘ Hinny 495. one for a i ewtvial is n° cause ^nfogtoasa-cond motion, if made on an(i 'reason shewn for not incor-poratmgbotii the first motion.
Surprise on p0¡n ™ateá,l,¿ otearíy marie «ut, coupled ^¿cumstan^ ces¡, whieli per se are not suffi<vent\vi!l justify the granting a new tria).
*29 Although, in our opinion, the weight of the evidence was against the verdict of the jury, yet as there was a contrariety of evidence, we should not on that ground alone, think ‘ourselves authorised to reverse the decision of the circuit court. ' We can, however, perceive no substantial reason for the refusal of that court to listen to the second application for a new trial, nor for a refusal to grant it upon the ground made out by the affidavit produced. Had the second application been made upon the same ground alone as the former, there would have been some propriety in refusing to hear it; but it was made upon new and additional ground. Or, if the party had not shewn sufficient reason for not having alledged, on the first application, the matter which forms the ground of the second, the latter application might, with propriety, have been rejected; but it appears that the affiant was absent when the first application was made, and that he did not expect that it would have been then made. ' We are, therefore, of opinion, that the court ought to have heard the second application, and we apprehend it is equally clear, that the application ouditto have been sustained upon the ground made out by the affidavit. _ .
_ As the witnesses whose depositions were pffered to be read, were still living, there is no doubt that the court did right in rejecting the depositions as evidence on the trial. The depositions, however, appear evidently to be material, and the affiant not only states that he believed that the depositions would have been permitted to be read, and but for that belief, he would have had the witnesses at the trial; *30 but he states circumstances that would naturally produce in his mind such a belief; for it appears that a part of the record of the suit in chancery, had been offered as evidence between the parties in another case, and that it was rejected on the ground that the whole record was not produced; besides, he swears that his counsel had informed him, that if the whole record were produced, the depositions would be read.
Hoggin and Hardin for plaintiff; Bibb, Talbot, and J\I\ Jijee, for defendants in error.
The counsel for the defendants in error,
on the rendition of this opinion, filed a petition for a rehearing in these; words;—

To the Honorable, the Judges of the Court of Appeals.

' The counsel of David and Molly M’Gce, defendants in error, at the suit of Joseph Hughes, would respectfully and most earnestly solicit your honors for a rehearing of said case; in which eventthev entertain a serious, and they trust, a well grounded hope, that they can most conclusively convince your honors, that the decree therein pronounced ought lo be set aside; and that the judgment of the inferior court ought to be affirmed, upon the following grounds, viu:-~. That the weight of testimony, and indeed the. whole of it, when properly construed and understood, is decidedly in favor of the verdict of the jury. 2d. That the defendant, in the court below, did not moke out such a case, upon his motion for a new trial, as ever was before in any case acknowledged to be sufficient, or a legal ground to justify the court behnv (who knew' all the circumstances) in granting a new' trial. And as this second ground seems to be the principal reason why the judgment of the court below' wrns reversed, the counsel for the plaintiffs will, as briefly as their feelings will justify, and the importance of the case require, ve-examine this part of the case, to which they cannot help calling the attention of the court, in a particular manner. And, in the first place, they are constrained to alledge, in the most unequivocal manner, that the affidavit of the mai* Who pretended to be the agent of the defendant below, upon his motion for a new trial, is notoriously and flagrantly untrue, upon the face of it, and is so certified by the court⅛ below, in the bill of exceptions. Hence they could not give credence to a man who, expert and wily as he universally is known to be in his law matters, had the presumption to state in his affidavit, what the court knew was not true. This honorable court is, therefore, again entreated to turn their attention.to the affidavit and bill of exceptions, which was the second application for a new trial. Hence the conclusion, that the affidavit of the party must be taken as true, cannot apply where it is known to be untrue; because, if reversals of judgments, in the inferior courts, are to .take place upon grounds which the party may himself make out, few cases would remain unreversed, after the plaintiff, by a long and tedious course of law, expense and vexation, has established his right, which, in ejectment ca-aes, may be so easily lost upon second trials, after a considerable lapse of time: and the counsel for the plaintiffs appeal to the sound understanding of your honors, to say whether you would yourselves grant a new trial, upon an affidavit which you knew did not contain the truth, as was the case in the present contest, when this pretended agent made oath, that he was not permitted to make use of a record, (which your honors have repeatedly decided could not be used in similar cases) except particulat parts, which he himself specified, when in truth and in fact he was permitted to use the whole of it, every iota, except the deposition Of witnesses, who were then living in an adjoining county. This part of the affidavit then being false, and so certified by the judge, can the court, or ought they,, to believe the balance? The counsel believe, that reason and common sense forbid the idea; more especially where the attempt at bribing is Super&dded by the respectable testimony of Gen. Ray. — • But let us for a moment enquire into the legal effect of this record, which he says he was not permitted to read. In the first place, it was not a record between the same parties; or, if it was, it could not be used as has been decided in the case of Rice’s heirs vs. Lowan; 2 Bibb, page 150. Or if used, it would tend to disqualify or render incompetent the testimony of Col. Thompson and Solomon Ryan, parties thereto, whose heresay testimony, in direct contradiction to record testimony, as we shall hope to prove presently, seems to have had an undue weight in the decision of this Cause, But let us see bow this agent, Joseph Lillard, waá deceived. Was it ever known that depositions taken between other parties were ever used in a common law suit, except by consent ; or that depositions were ever used, except in cases where the witnesses lived out of the state? Does the records of jurisprudence, from the days of Alfred down to the present day, furnish a single example — or could any lawyer ever have advised Joseph Lillard, that a record or deposition of living witnesses, who live in the state, could be used upon atrial in ejectment or is this court of appeals, so bound down by rigid form, that they are compelled to shut their eyes against truth, and the natural deductions which the whole state of the case would authorise? Or are they compelled to take an affidavit as true; which, upon the whole face of it, is known not to be so. But this case has not even the semblance of truth io justify the inference, that the affidavit i'i true on the ground of surprise, because we are taught to believe, that the suppression of truth is as bad as wilful misrepresentation, and misrepresentation is to he found in anotherpart of this agent’s affidavit: scilicit, that the part of a record which he intended to use, was in another case filed, and was objected to because it was not the whole record. He does not say a word about what inducement he had to expect it tobe used in the present suit, of that the plaintiffs or their counsel had deceived him by any promise, that it should be used — because, if he had, truth would have compelled him to say, that his counsel advised him to have his witnesses present, and that the counsel for the plaintiffs had, from the commencement of the suit, refused to have depositions of living witnesses used. But this agent, relying upon his ingenuity, pressed a trial in the absence of one of the plaintiffs’witnesses, and then pretends to have been surprised, when he found that record testimony as well as living witnesses, proved the boundary of the plaintiffs’ claim.— Hence the counsel for the plaintiffs below, are constrained, in the most pressing manner, respectfully to request a rehearing and re-examination into the truth of the principle of surprise, arid the grounds alledged by the agent for the defendants below, which cannot, for a moment, be believed by any impartial and enquiring mirid, who will duly weigh all the circumstances of this case. And the following decisions of your honors, are respectfully cited to prove, that this preceding ideas are correct: — 2d Bibb, page 17; 2d Bibb, 64 and 177, and 3d Bibb, page 80.
*30 We think, therefore, that, on the ground of surprise, taken in connection with the consideration, that the verdict was against the weight of evidence, the circuit court ought to have granted a new trial. '
Judgment reversed with cost, and cause remanded for a new’ trial.
If the court are to grant new trials and reverse judgments in ejectments in all cases where the defendants or plaintiffs swear that they were surprised, whether their affidavits are true or false upon the face of them, and without enquiring whether there were reasonable grounds for believing a surprise took place, we again repeat, that unstable indeed will be the judgments in ejectment when the witnesses live in foreign parts, or áre aged and infirm: — - Hence the counsel for the plaintiffs feel so much anxiety, when they are conscientiously convinced that the principle established by the reversal in this case, is a dangerous ánd a very unstable one; and, in the second place, that the real facts of this cause do not justify the establishment of the principle. Common sense and common honesty forbid and contradict the statement in the agent’s affidavit, (over and above the false statement as to other matter,) that any man, much less any law-yercould advise that depositions in a chancety cause, not even betioccn the same parties, cculd be used upon a trial in ejectment. But even as unreasonable as was this expectation, the bill of exceptions by the defendant proves, that the plaintiffs did not except or apply for a rejection of the record, but were even willing to have it read, so conscious ■were they of the justice of their claim. The defendant was required by the court to withdraw his motion and bill of exceptions, on the first motion for a new trial, as a prerequisite to the second for the same cause. Hence there was no interference with the defendant by the plaintiffs or their counsel. Upon the first ground incidentally noticed by the court, as to the verdict having been contrary to the weight of evidence, the counsel for the plaintiffs believe, with due respect to your honors, that the heresay evidence of the witnesses for the defendant, ought not to outweigh the positive testimony of James M’Gee, who was at an age when the memory is most strong and retentive, as well as the evidence of general Ray, one of whom swears to facts which, when we appeal to the patents and surveyor’s reports, are conclusively and positively sustained, and the other, that he saw an old marked line, in the year 1796, from I to L, he making it his business to search for it. He, therefore, is entitled to more weight than Thompson and Ryan,.the latter of whom was a chain carrier, and heitber of whom tell you that they searched for a line, aná at least Ryan had 110 opportunity so to do. When, on the other side, James M’Gee, (whose reputation as a man, stands as high as any other,) swears positively and details circumstances and facts relative to a spring in Lillard’s field, which at once carries conviction to the unprejuced taind: But in corroboration of his evideuce, when we examine tile patents of John M’Gee and Robert M’Afee, as well a^ the surveyor’s report in this case, and in the suit ..in' chancery, the record of which the defendant has attempted to foist into this cause; also the survey made in the name of Myers and Holmes; they all go, conclusively, to support the testimony of James M’Gee and gen. James Ray, on the part of the plaintiffs, and directly contradict the testimony of George Thompson and Sol. Ryan, as to old Mr. John M’Gee ever claiming the line C D, in the suit in chancery. In the first place, George Thompson speaks of old Mr. M’Gee pointing out the white oak corner, and Sol. Ryan that M’Gee always claimed it, when Ry- . an acknowledges that lie never saw M’Gee there, or that M’Gee ever shewed it to him. Thompson is contradicted by Ray, who says helloes not recollect or believe, that old Mr. M’Gee was ever out on the land during the pendency of the suit in chancery. M’Gee was eighty years' of age, and was well known to have been confined to his house for ten or twelve years before; and yet this bare clictum of George Thompson and Sol. Ryan, is to bear down the surveyor’s report in the chancery suit, which, at the first blush on the face of it, shews that the line C D, was never claimed by M’Gee as 1ns line, but that his survey of 500 acres projects considerably further east; and that the survey of Robert M’Afee, which adjoins above,, actually covers the greater part of the land now contended for by David and Molly M’Gee; and this stubborn fact ought to outweigh twenty partial and heresay witnesses, whose statements upon the face of them detail events easy to assert but hard to contradict, by oral testimony, when time is nbt specified; and we entreat your honors to again examine the platt made out in the suit in chancery, which is made the great chart of, the defendant’s claim, foi; which he can-1 not even shew' an 'entry, which may be called an actual dis-seisin icithout right. But when we come to compare the patents of John M’Gee and Robert M’Afee, the Absurdity, becomes more glaring; the surveys were both made in one day, (so says James M’Gee,) and from the dates affixed by the surveyor, there is every reason to believe the fact, as the one bears date the 8th and the other the 10th of June, 1780, it being universally known the dates of surveys, as to a few days, are and were entirely arbitrary with the surveyors. The surveys are of the same size and shape; M’Afee begins farther west than M’Gee, at a Spanish oak and buckeye, at the letter E; M’Gee begins at A and runs to B, in Robt. M'JlfeVs line: these corners are all standing, and are pointed out by the surveyor. Now we intreat the court to take the patent of Robert M’Afee and M’Gee, and read them — begin at E, with Robt. M’Afee, a Spanish oak and buckeye, thence S. 260 poles to F, a white oak and hickory, thence E. 3Q7f poles, crossing salt river to G, a white oak and dogwood, thence N. 260 poles to a post oak tree in John JIÍ ’ Gee’s line, at C; this corner was agreed upon by the parties as Robert M’Afee’s, so says the surveyor, and a post oak stump is here found. JYoiv we ask the court, is the corner C, John M’Gee’s corner, or M’Afee’s corner in his line? or when this corner is agreed to be Robt. M’Afee’s, is it not proof conclusive, strong as holy terit, that M’Gee’s land extends farther east, and that James M’Gee’s explanation, that the line C D was run by mistake and afterwards corrected, is true? and this will explain even Thompsons deposition, who made the survey, if it had been used, and the surveyor would have detected the error at the first blush. But in addition, take the survey of Myers and Holmes, and it will be found that the survey was made in 1785, upon the truth of this statement— the survey was made from L to I, and from I to M, 34 poles. Now? if Myers had run on to D and thence to C, the call of his patent of 34 poles to M, where this corner really stands, as well as the two post oaks at I, would have been absurd and impossible. Hence all the patents and surveys prove the boundary of M’Gee, and bear James M’Gee out in his account of the whole transaction; and general Ray says, “In 1796, I examined for and found an ancient line, but not very well marked from I toL.” But Thompson and Ryan did not see it — 'and why? Thompson did not look for it, as he w7as already satisfied, and Ryan had not much chance. This, let it be remembered, was 11 years after Myers and Holmes’ survey, and 16 years after M’Gee’s. But the surveyor says, that he cut fome of the Jine trees, and they counted only 16 years, when he made the survey in this suit — ;and how did this happen? The truth of the case will be found in the record; the greater part of this line was cleared ground, and the trees he cut were made and correspond with the date of Sage's survey,- But the corner counted 29 or 30 years — ■ and this can be accounted for by the impossibility of counting the growths of a close grained, knarly as well as knotty post oak, on a barren ridge, and ought not to be mads weigh as evidence against the positive testimony of one of the chain carriers, of unimpeached and unimpeachable character, corroborated by the calls of all the surveys and patents of the adjoining surveys, made at an early date. Hence your petitioners most earnestly entreat, and most sanguinely expect, that your honors, upon a review of this cause, will grant them a rehearing; and not compel them tc the hazard of their rights, to have a second trial, and to drag their witnesses from other states, upon the ground made out by the defendants; and upon a review of the whole premises, a rehearing will be granted, and that the judgment of the inferior court will finally be affirmed.
The plaintiffs in ejectment claim, under the devise to them of the land he lived on, which was the pre-emption súrvey of 500 acres, half of his pre-emption wt. surveyed in his own name. The 500 acres upon the treasury' wt. adjoining the former on the east, which the testator called his “500 acre tract,” was devised to John, Joseph and William. Now the boundaries of these two surveys, determine the respective interests devised to Molly and David M’Gee, the lessors of the plaintiff, and to John, Joseph and William. The boundary of the 500 acre tract, de-vjsed to the threee sons, was á matter of public record; and the attempt to prove, by parol, that the testator claimed the boundary thereof, coutrary to his certificate of survey and his patent, thereby to lessen the one devise and increase the other, ought to be very cautiously admitted. It will be found, by turning to the record of the chancery suit, that both tracts did interfere with the lands in controversy in the chancery suit. There, however, it was the interest of Thompson andRyanfwho were defendantsjto enlarge the preemption survey, ana contract the survey of th e treasury warrant claim: see Thompson’s answer, p. 68, in which he contends it was in the survey of SOOacres on the pre-emption warrant, (now claimed by the lessors of the plaintiff.) Then he was contending against the treasury W. Having succeeded in that suit, and his interest then being to contract the treasury warrant, it is easy to account for his seeing the matter through a different medium then and now, different from the witness, gen. Ray, who, as Ray states, found the an-cientline trees contrary to Thompson’s interest. The same remark applies to Ryan, the witness in the ejeetment.
It is true, that the bill of M’Gee was filed by the testator, relying on the treasury warrant: It is also true, that both these claims were spoken of in the bill, but the treasury wt. was the claim relied on. Both might, with propriety, haye been drawn into controversy, had the counsel of M’Gee thought proper, and not have mistaken the case of his client. The pre-emption was the claim which should have been drawn into the controversy more particularly, not by bill, but by ejectment, that being the eider patent for the land within it.
The bill in that cause, therefore, is but the suggestion of counsel and not evidence against the complainant therein; and, consequently, not evidence against his devisee — see Peak. — -All which is respectfully submitted.
BIBB & TALBOT, for pteitioners.
R. B. M’AFEE.

M-Gee ads. Hughes.

The counsel for the defendants in error
respectfully solicit á rehearing for the following reasons:
The court suffered all the depositions in the chancery suit to be read, except those of persons who were living and within reach — but the defendant below would not — - gee judge’s certificate in kill of exceptions, p. 27.
The refusal of the court to suffer the deposition to be read, was proper.
1st. Because the depositions of living witnesses, altho’ taken in chancery, cannot be read on a trial at law. — Gilbert law Ev. p. 54 or 61; Buller’s N. P. p. 289; 1 Atk. 445 or 519, Fry vs. Wood; Philips Ev. 267,
2nd. As Hughes rvas no party to the bill in chancery, he could not use the depositions at all on the trial, although offered against a party or privy■ — See Gilbert L. É. p. 55 or 62; Buller N. P. 239; philips Ev. 258 (309.)
The surprise complained of, was because the judge rejected evidence clearly illegal, as is shewn by the authorities before cited. He does not swear he had ever been advised by counsel that the deposition of living witnesses would be received in this suit, or that the record could be received at all in this suit — it ought not to have been, as is proved by the cases before cited, and Bull. N. P. 233— and he artfully introduces his agency in another case, where the record might have been used, and where counsel might have advised the production of it. He does not swear he was advised by counsel that it was useless to summon the witnesses, os; that they advised him not to summon those men. They might, and probably did, advise him to summon them, if he consulted them upon the preparation of this cause.
But, upon the supposition that these men could be procured at another trial; still it is believed'that the evidence ought not to turn the scale against the plaintiff in ejectment.
The evidence growing out of the adjoining survey — the call of M’Afee’s survey to corner in M’Gee’s line, when these surveys were made the same day and by same surveyor, and therefore not probable that the surveyor would commit so great a mistake, as to call for the corner of M’Afee to be' in M’Gee’s line, when, according to the defence below, that corner of M’Afee is also M’Gee’s corner, (to wit: corner C.*j — add to this the positive testimony of gen. Ray, and of one of the chain carriers also, and it would seem that the depositions of Thompson and Ryan could not outweigh the plaintiffs’ evidence of boundary. But for a more forcible view of the evidence as to boundary, I beg leave to refer to the enclosed petition, drawn by a coadjutor.
Will the court, then, grant a hew trial to let in evidence, which, when received, ought not to cast the verdict for the party asking the new trial?
All which ⅛ respectfully submitted.
BIBB.
The cause came on to be argued at the spring term, 1818, when the court overruled the petition and affirmed the judgment.